Thank you, Your Honors, and may it please the Court, Bartis Bakili for Petitioner Taldybek Usubakunov. Oh, that's my clock. I'm going to attempt to reserve about three minutes for a moment. All right. Thank you, Your Honors. Your Honors, since Mr. Usubakunov presented himself at our border and asked for asylum, his rights have been violated in many ways. I'd like to focus today on two, and any others the Court would like to discuss, of course. First, whether his right to counsel was violated when, after months of diligent search, he identified for the Court, the immigration judge, an attorney ready, willing, and able to take his case. But the immigration judge denied a continuance so that attorney could appear. And second, whether his right to present evidence was violated when, fully aware that the government had forcibly split, separated, and separately processed his family, and that his son, Reynat, with crucial testimony, was in ISIS custody and out of Mr. Usubakunov's custody, the immigration judge did nothing to develop the record with the evidence that Reynat had. Turning to the first issue, Your Honor, on the right to counsel, it's important to point out this is not a case seeking a continuance to a search for counsel. Mr. Usubakunov had found and identified a specific attorney, ready, willing, and able to take his case pro bono. Could I just ask, you say ready, willing, and able, but that isn't what he said to the IJ. He said he has been informed that Luis Gonzalez is very likely to represent me pro bono. So how do we get from there to ready, willing, and able? Yes, Your Honor, the continuance goes on to say all Mr. Gonzalez had to do was find a Russian interpreter so that they could formalize the relationship. And it's important to note that Mr. Usubakunov shared details in that motion to continue that only a prospective client could possibly know. Not only did he identify Mr. Gonzalez and where he worked, he knew Mr. Gonzalez's schedule. He said Mr. Gonzalez is not available on June 29th if you continue the case. He knew Mr. Gonzalez had a conflict that day, and that's why Mr. Gonzalez could not appear. So it's not as if he pulled a name out of a hat. There was clearly serious conversations about representation happening. And under this court's case law, when there's such strong indications of representation, the right to counsel is so fundamental and important that the I.J. had a duty at that point to at minimum probe if he had any doubt and not press forward. In Collinger-Saguilar, for example, there was no attorney that had ever entered an appearance in the case. There had been a motion to continue signed by an attorney, but that attorney had never entered or appeared. And the court found it a violation that there were sufficiently strong indications, that's the language of the court, to probe further rather than press forward in the case. Similarly, in Reyes-Palacios, which we've cited, there was even less of an indication than there are in this case. The immigration judge, it was another detained case, the immigration judge said, did you find a lawyer yet? And the detained person said yes. But the attorney didn't show, and the immigration judge, again, did not probe any further and continued forward. And in a procurement opinion, judges Kaczynski, Brown, and Scopel said that was not enough. They pointed to the fundamental nature of the right to counsel, said it could not be understated in removal proceedings. The number of cases where the right to counsel has been found not to have been violated, there's been evidence of delay or some effort to basically gain the proceedings. And is there any evidence of that here? Not only is there no evidence of that here, it's quite the opposite. Mr. Ustabakanov was diligent at every turn. He was given two continuance at the beginning of the case to find counsel, that's pretty standard. But he turned in his application, he worked hard to turn in his application, he diligently wrote during that time to attorneys trying to get them to represent him and never heard back. When he turned in his application, he was offered a merits hearing date, either three weeks in the future or three months in the future, and he took the three-week date. And of course he did, Your Honor. Those of us who have children know that the first and foremost thing on his mind at that point was, is what I'm doing getting me closer to getting back to my child? And so he took the three-week date. But when he finally had found counsel and appeared, he said, and he put this in the written motion, I don't want to delay my case, but this right to counsel is important. I want to get back to my child. But that's why. So he's the picture of the opposite of dilatory tactics. He's in fact a textbook example of why the right needs to be presented so much. It's also important here, Your Honor, to note the context. Context is important. This merits hearing happened on May 8, 2018. Family separation was at the forefront of the American consciousness. We had just argued the preliminary injunction hearing in Miss L the Friday before on May 4th. The immigration judge's boss, Attorney General Sessions, had come to San Diego, where Otay Mesa is, the day before on May 7th and announced the zero tolerance policy that put family separation on steroids. So this was at the forefront of everyone's mind, and it should not have been a surprise to the immigration judge that there was a renewed interest in finding representation to the victims of that policy. And so because of the strong indications of counsel, at least probing, I would suggest that there was enough in the record to grant the continuance. And if there was any doubt at that point, a board whose role is to correct legal errors like this and to ensure that these rights, fundamental rights, are protected, knew that Mr. Gonzalez himself represented Mr. Usabakanoff on the appeal and still failed to send it back. So while Mr. Usabakanoff was finally on the brink of counsel, the immigration judge and the board snuffed out that hope and forced him to press forward. And it led to the result here. And that poisoned the credibility determination because he had no representation. Unless there's anything else on the right to counsel, I'd like to also turn to the right to present evidence issue. You know, immigration judges may not have to go blindly searching for evidence to help applicants that are before them. But under this court's precedent, at minimum, they may not ignore critical evidence that's specifically requested, that's in ICE's sole custody, and that the applicant cannot himself access. And that's what's the case here. It was clear from the start that Raynott's case and Mr. Usabakanoff's were inextricably intertwined. Mr. Usabakanoff's case revolved around Raynott's political actions. It was obvious also that Mr. Usabakanoff wanted Raynott to testify. The BIA acknowledged as much, page two of the record. He said it in his motion to continue. He also indicated that Raynott might have had documents. He said that in his credible fear interview at 365 in the record. He said in his hearing, my wife nails him things, meaning Raynott. That's a 270 in the record. And it was clear that Mr. Usabakanoff couldn't access him. He didn't even, nobody bothered to tell Mr. Usabakanoff where his son was. He thought he was in a detention center in Oceanside. Everybody in that courtroom except Mr. Usabakanoff knew there was no detention center in Oceanside, California. The government argues that he was in touch with his wife and that the wife was in touch with Raynott. Is that incorrect? And that therefore he did have access to getting this information. Is that incorrect? It's correct that Mr. Usabakanoff was in contact with his wife in Kyrgyzstan. That Raynott separately was in touch with his wife in Kyrgyzstan. But that's not sufficient, Your Honor, under this court's precedent to be meaningful access. The court can look to a few cases to understand what the judge's obligations were here. And again, in the Agyemen case, the issue was the bona fides of a marriage, proving the bona fides of a marriage. And the immigration judge told the applicant, you know what, we need to hear from your wife on this. Let's get her in here to testify. Already that's more than the immigration judge did here saying, you know, suggesting we should get Raynott in here and get his testimony in. And Judge Trott points that out in the dissent. The immigration judge in the Agyemen was trying to help. But when that witness failed to appear, the court found there to be a violation when the immigration judge didn't then follow up and say, here are your other means of proving the bona fides of your marriage, tax records, other declarations, things like that. And that was a violation of a reasonable opportunity to present evidence to advise of those means. Could you be more specific as to what you think was either the government's or the judge's obligation at this point? His other son is in detention. He actually doesn't know where he is in detention. And your client doesn't speak English. So is that a government obligation at that point to try to produce the witness? Or what is the role of the IJ vis-a-vis the government? So this case doesn't challenge ICE's detention authority. No, I understand that. But I think the immigration judge, there's two things I think the judge was required to do. Under a Yemen, it was to advise him of the means, that Radon's testimony was important, and that here are the various means, and we laid them out in our brief, that you might get it. A declaration, request a deposition or a subpoena, or move to change venue or consolidate. Here are the options. And that comes straight from a Yemen. The other thing that comes from Dent and Ibarra-Flores is the immigration judge had to order ICE to provide some reasonable access to his son. When you look at the facts of Dent, the issue was A-files, these files of immigration that ICE keeps on the applicants. And it was clear there was critical evidence in those A-files. It was clear that the applicant wanted those A-files, and the immigration judge didn't order them to be produced to the applicant. And Judge Kleinfeld wrote... If we were to agree with you on the counsel issue, I assume we wouldn't need to reach the other issues, correct? And I think his son has already been granted relief. His son has been granted relief, which points out sort of the absurd results that Judge Kleinfeld suggested might happen, this Kafka-esque sense of humor he referred to, if there was a rule other than the information must be produced. Unless the court must reach it, Your Honor, you know, even with counsel, the credibility issue, I think, is likely to appear again on remand. Unless the court addresses the right-to-present-evidence issue that really caused this, something has to be said about the fact that Raynaud was not able to testify, and the immigration judge took no steps to get his testimony. So I suggest, because this might... Unless the credibility issue is really addressed in the court's opinion on the remand, I think it does need to address the right-to-present-evidence issue. I also think what's clear from the amicus briefs is this is not a solitary incident. This is a policy of forcibly splitting and scattering and separately detaining family members of the same asylum case. But I do think immigration judges do need some guidance on what they're supposed to do, and they can look to Dent and Ibarra Flores for that. You have three minutes left. Do you want to reserve that? Respectfully, yes, Your Honor. Thank you. Good morning. Good morning. May it please the court, Mario Lutero for the respondent. In essence, there are three questions before the court. Whether the immigration judge's denial of a continuance at the start of the merits hearing was an abuse of discretion, and whether that denial violated petitioner's right to a full and fair hearing. Second, whether the record evidence compels only the conclusion that the petitioner is credible. And third, whether the board abused its discretion in declining to remand the case. The answer to all three questions is no, and as a result, the court should deny this petition for review. First, with regard to petitioner's right to counsel. First, here, the immigration judge provided petitioner two continuances at the start of the proceedings for him to obtain counsel for a total of 51 days. In addition to those 51 days specifically to obtain counsel, petitioner also had an additional three months within which to try and secure representation. On these facts, it cannot be said that petitioner did not receive a reasonable amount of time to obtain counsel in this case. The question really is, you know, it's easy to throw around words like reasonable and abuse of discretion, but if you look at the facts, here we are at the hearing. He says he's in touch with him. He's going to most likely take his case. It's not like, oh, I talked to legal services or I contacted Casa Cornelia or something like that. He gives you the name of a precise attorney who cannot appear on that date. So that is a far cry from petitioners who keep requesting multiple continuances, isn't it? I mean, we have a very specific factual situation in front of the IJ at this point. But the immigration judge had a motion to continue from petitioner. The petitioner indicated counsel by name and stated that it's very likely that the counsel would take his case. However, the petitioner stated that he had indeed secured representation. Nor is there any evidence that at the time he had secured representation. He actually said, obviously, he needed to speak with the counsel with an interpreter. I think he said Russian interpreter present in order to move forward. I mean, that's just one more small step. So it's not just a question of finding the attorney, but then, of course, getting together with the interpreter, the petitioner and the attorney. So he's actually laid out exactly what needs to happen at this point, hasn't he? He did indicate the steps and noted that it's very likely that he would receive representation. And the immigration judge explicitly asked him before making a decision on the motion, whether he was indeed looking for an additional 45 days of continuance to find counsel. And petitioner stated, yes, that he was looking for continuance to find counsel. He never indicated that he indeed had secured representation. In addition, the immigration judge took into account the prior continuances he had granted in that case to find counsel and otherwise. Moreover, the petitioner in this case also indicated after his first continuance to obtain counsel, that the immigration judge asked him whether he had secured representation at the time. And the petitioner stated, no, not yet, and that negotiations are in place. He received another continuance thereafter, but was not able to secure representation at that time as well. And in considering the motion to continue in this context, it cannot be said that the immigration judge abused its discretion or violated the petitioner's right to counsel in denying that additional continuance at the start of the merits hearing. You know, I actually am quite sympathetic to the IJs because there are a lot of requests for continuance. They need to move a docket. They have an incredibly heavy docket. But it seems to me if you look at what happened here and also in the First Circuit case of the Hernandez-Lara, that we're with someone who cannot speak English, who is detained, who is separated from a minor child. And what he wants to do is get together with this lawyer. And we all know that from all the statistics that having a lawyer makes a difference. So why in light of all of that isn't it an abuse of discretion? There's not, you know, there's obviously a need to move the docket, but the moving the docket cannot be really at the expense of the rights of a petitioner. And I'm sure you agree with that. Is there any limit to the number of continuances that should be given or should it be unlimited? I'm not aware of any specific number of limits. Indeed, this Court does recognize that there are no bright-line rules regarding what constitutes a reasonable amount of time to obtain counsel. And the inquiry is fact-specific and depends on the case before the immigration judge in considering the facts. And the immigration judge here considered the continuances. He had provided the petitioner in this case to obtain counsel. And asked specifically if he asked for continuance to find counsel at the start of the merits hearing, to which the petitioner stated yes. And to address the First Circuit decision in the Hernandez-Lara, first, of course, this decision is not binding in this Court. But second, it's also factually different. In that case, the Court noted that the petitioner had only 14 business days to obtain counsel. She realized she needed another one because of her mistaken understanding of the scope of her bond attorney's representation. And she also actually had retained counsel at the start of her merits hearing, unlike here, just that the counsel wasn't present at the time. What should the BIA have done, if anything, with the fact that the lawyer whose name was mentioned to the IJ was actually representing the petitioner on appeal to the BIA? I mean, just from a common sense standpoint, it seems like, well, he obviously wasn't just picking a specific name onto the phone book. It's a real lawyer. The real lawyer is actually representing him. What would you have us say about what the BIA should have done with that piece of information? The BIA looked at what were the facts before the immigration judge. And whether the immigration judge's denial of that additional continuance was an abuse of discretion. They looked at the facts as they were before the immigration judge. The motion stated that it's very likely that he was going to get representation, but he indeed did not have representation at the time. He had received numerous continuances beforehand to specifically define counsel. And he had indeed previously stated that he was in negotiations to find a counsel, but thereafter did not get counsel. And, again, the immigration judge explicitly asked him. He was asking for continuance, another continuance to find counsel, and he stated yes. And that's what the board looked at. And based on that, decided that the immigration judge did not abuse its discretion when looking at evidence as they were before the immigration judge in denying the additional continuance. I know that's what they did. I'm just asking you what you think they should have done. And were they limited to that use of the information? Just to say not use it at all. It is my understanding that they had to look at what the immigration judge had before it in denying the continuance. Because the question they answered was whether the immigration judge's denial of the continuance was an abuse of discretion. And in answering that question, they had to look at the information that the immigration judge had at that time in denying the continuance. That answers my question. In addition to the right to counsel question, the agency also did not violate the petitioner's right to present evidence. First, the petitioner had, again, numerous continuances for approximately five months, in fact, before his merits hearing. And he was given an opportunity to- You keep saying numerous continuances. Precisely how many? He had two continuances to obtain counsel. Two continuances. One of which was over the objection of the government attorney to complete his asylum application and look for any evidence, if he wanted to present any evidence to the immigration court. And then an additional continuance to schedule the merits hearing for his merits hearing. So that last continuance, the immigration judge specifically asked the petitioner if he wanted more time to gather evidence or obtain evidence. And the petitioner stated no, he did not. And that's when the merits hearing was scheduled for May 8th. And again, the immigration judge also stated to the petitioner to provide any evidence he wanted the immigration judge to consider to bring it to the merits hearing. So, on these facts, it simply cannot be said that the petitioner was not given a reasonable possibility to present evidence in this case. In addition to the continuances, the immigration judge allowed the petitioner fully to testify about his experiences, as well as his stepson's experiences in Kyrgyzstan. There was no evidence whatsoever that the immigration judge cut off testimony or refused to listen to the petitioner's explanations to any of the inconsistencies that the immigration judge pointed out. Besides that, there's also no evidence that the immigration judge refused to admit any testimony from the petitioner, which is what this court has found to be a due process violation. So on this record, it simply cannot be said that the proceeding was so fundamentally unfair that the petitioner was prevented from reasonably presenting his case here. Ultimately, what the petitioner argues the immigration judge's duty should be is to, in essence, correspond and assist in providing witnesses in cases such as these. But there is no requirement or rule for immigration judges to help prove applicants' asylum cases for securing witnesses. The petitioner never requested the immigration judge to assist him in providing any evidence from his stepson's run-out. As this court recently recognized in its saying, the immigration judge's need not, indeed cannot, essentially act as sure buzz for pro se petitioners, guiding them in making their case. And what the petitioner asks the immigration judge to do is to essentially act as advocates for pro se asylum applicants. And as this court in Hustain recognized, that is incorrect. And it would, in effect, undermine the procedural process established by Congress for petitioners in immigration proceedings. Isn't there a difference between acting as an advocate or even cleaning up the record versus asking the government to advise what steps are necessary to obtain a witness who also is detained? I think there's kind of a difference and I would appreciate your discussion on that. Here, the petitioner never requested any type of assistance with any evidence, including any evidence from his stepson. So, now asking the immigration judges to be in a position to, in essence, help pro se applicants to respond to that, to obtain that evidence. There is no rule or requirement to do so. And assisting them, in essence, with evidence to help prove their case would be guiding petitioners in making, in essence, in making their case. Like this court in Hustain noted. If the court has no questions about the right to present evidence, I will move on to the adverse credibility part. The record also does not compel the conclusion that the petitioner testified credibly. Here, the agency's adverse credibility finding is based on specific and cogent reasons. Namely, the inconsistencies, pre-inconsistencies in fact, as well as an omission. And all these are supported by substantial evidence. In addition, the immigration judge considered the petitioner's explanations for these inconsistencies and found them unconvincing. So, under the substantial evidence review, the record supports the adverse credibility determination. I see that my time is almost up, so if the court has no other questions, I will conclude. Is that? That, thank you. To emphasize, due process does not require a perfect hearing. And the petitioner here was given the process he was due, where he was given a full and fair opportunity to be represented by counsel, to prepare an application for immigration relief, and to present testimony and other evidence in support of the application. Ultimately here, the immigration judge determined that the petitioner was not credible, which is supported by substantial evidence. And having a corroborating witness does not cure the credibility issue. Indeed, each asylum case raises and falls on its own facts. And simply because we're not cut asylum does not necessarily mean that the petitioner in this case did not get the fair opportunity to present his own case. For these reasons, and for the reasons stated in Respondent's Brief, the court should deny this petition for review. Thank you. Thank you. Thank you, Your Honors. Just, I think, three points here. One, Hussain is inapplicable to this case, and it's obvious from the face of it. Hussain's opinion says specifically, there's no indication here that the applicant is unable to present evidence. And from there, the court goes on to say, the immigration judge doesn't have to go hunting around. That's not his case. It's very clear. Mr. Yusuf Bakunov was not able to present his son's testimony. He didn't even know where he was. And so Hussain doesn't, it falls on a line of cases like Morial Luna, that say an immigration judge doesn't have to go hunting around. But this case falls squarely in the Yemen Jacinto line of cases where, and Dent, and Ibarra Flores, where there's difficulty presenting evidence. Difficulty knowing the options of how to do that. The government says he never asked to, for assistance. Is that correct? He, in fact, in his motion to continue, he said, I'd like my son to testify. And the BIA acknowledges that. Is that his son or his stepson? His stepson, Raynaud. I'm sorry. I tried to use Raynaud so we'd clear up who we're talking about. So he said, I'd like Raynaud to testify, the stepson, the adult, who's the central figure in this case. And the board acknowledges that. He asked the IHA for help, assistance in that. Now, there's no magic words requirement. He didn't say, your honor, help me. But he did say, if you grant the continuance, my son, Raynaud, might be able to testify. Particularly if I get the attorney to help me do that. Okay. So the government's correct that there wasn't any request for the IHA to assist. And, in fact. Is that correct? Factually, that's an accurate assessment. In a Yemen, there's no such magic word requirement. In a Yemen, the judge's responsibility, because of the lack of knowledge and the lack of awareness, and the imbalance that these hearings have, naturally, is the IJ's responsibility, as part of the duty to develop the record, to identify ways to get this critical testimony. So is the IJ supposed to develop evidence for the, or identify evidence that might be helpful to the petitioner's case? Not, your honor, not identify evidence. But not, simply not ignore, obviously, critical evidence that is presented with front and center. So if the IJ has a superior knowledge about the requirements for getting asylum, then the IJ should develop that information if it would be helpful to the petitioner. If the IJ, not quite, your honor. That's not precisely what I'm trying to advocate for. I'm suggesting that when the IJ has awareness that critical evidence is in ICE custody, and the applicant can't access it, and under DENT, the immigration judge has to advise, this testimony is crucial. Raynaud's the central figure of this asylum case. To suggest that the IJ didn't have some duty to develop the record, it would eliminate this decades of case law about the IJ's duty to develop the record, to say the IJ didn't have some responsibility to say this information had to come forward. One note about the BIA's role I know of over time. It's a de novo review on legal issues. It can take in information that comes in later. That was clear in Mendoza, MO. And finally, to conclude, your honors, Mr. Usabukunov does not request a perfect hearing. All he wants, and all he ever has wanted, is a reasonable and fair opportunity to prove the truth of what he's claiming. And I respectfully request the court grant him that. The case just argued, Usabukunov v. Wilkinson is submitted, and I thank both counsel for your argument this morning.
judges: McKeown, Ikuta, Ericksen